# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTES

DOCKET NO.

KEN WILLIAMS,

    Plaintiff,

    v.

THE CITY OF BROCKTON,
WILLIAM K.CONLON, in his individual and official capacity
as Former Chief of the Brockton Police Department,
EMANUEL GOMES, in his individual and official capacity
as Interim Chief of the Brockton Police Department,
BRIAN LEARY, in his individual and official capacity
as a Brockton Police Officer,
LON ELLIOTT, in his individual and official capacity as
a Brockton Police Officer,

AND

THE BROCKTON RETIREMENT BOARD,
WILLIAM R. FARMER, in his individual and official capacity
as a member of the Brockton Retirement Board,
WILLIAM E. PARLOW, in his individual and official capacity
as a member of the Brockton Retirement Board,
MATTHEW J. MCLAUGHLIN in his individual and official capacity
as a member of the Brockton Retirement Board,
EDWARD P. MACK, in his individual and official capacity
as a member of the Brockton Retirement Board,
HEIDI A. CHUCKRAN, in her individual and official capacity
as a member of the Brockton Retirement Board,

    Defendants.

## COMPLAINT AND JURY TRIAL DEMAND

## THE PARTIES

### The Police Defendants

1. The Plaintiff, Ken Williams is a Massachusetts resident who resides in Lakeville, MA. Williams is a former public employee who was employed by the Brockton Police Department (the "BPD").

2. The Defendant, the City of Brockton is a municipality of the Commonwealth of Massachusetts with a principal address of 45 School Street, Brockton, MA.

3. The Defendant, William K. Conlon is a Massachusetts resident and he is being sued in his official capacity as a former Chief of the BPD as well as in this individual capacity. Chief Conlon was or is responsible for enforcing the unconstitutional customs, policies, or practices complained of herein on behalf of the City of Brockton.

4. The Defendant, Emanuel Gomes is a Massachusetts resident and he is being sued in his official capacity as Interim Chief of the BPD as well as in this individual capacity. Interim Chief Gomes is responsible for enforcing the unconstitutional customs, policies, or practices complained of herein on behalf of the City of Brockton.

5. The Defendant, Lon Elliott is a Massachusetts resident and he is being sued in his individual capacity as well as in his official capacity as a police officer for the City of Brockton.

6. The Defendant, Brain Leary is a Massachusetts resident and he is being sued in his individual capacity and in his official capacity as a police officer for the City of Brockton.

7. The City of Brockton, Leary, Gomes, Elliot, and Conlon are hereinafter referred to as the Police Defendants.

The Retirement Board Defendants

8. The Brockton Retirement Board (the "BRB") is an organization organized under the laws of the Commonwealth of Massachusetts and is charged with administering retirement, disability retirement, and accidental retirement benefits for public employees in the City of Brockton pursuant to the Massachusetts statute M.G.L. c. 32, § 20A.

9. The Defendant, William Farmer is a Massachusetts resident and he is being sued in his individual capacity and in his official capacity as a Chairman of the BRB. The

10. The Defendant, William Parlow is a Massachusetts resident and he is being sued in his individual capacity and in his official capacity as Elected Member of the BRB.

11. The Defendant, Matthew J. McLaughlin is a Massachusetts resident and he is being sued in his individual capacity and in his official capacity as Appointed Member of the BRB.

12. The Defendant, Edward P. Mack is a Massachusetts resident and he is being sued in his individual capacity and in his official capacity as Elected Member of the BRB.

13. The Defendant, Heidi A. Chuckran is a Massachusetts resident and she is being sued in her individual capacity and in her official capacity as Member Ex Officio of the BRB.

14. Parlow, the BRB, Chuckran, Mack, McLaughlin, and Farmer are hereinafter referred to as the Retirement Board Defendants.

**JURISDICTION AND VENUE**

15. Jurisdiction and venue are proper in the Federal Court for the District of Massachusetts pursuant to 42 U.S.C. § 1983, 42 U.S.C. 1988, 42 U.S.C. § 12101, and 28 U.S.C. § 1343. This Court also has supplemental jurisdiction over certain laws of the Commonwealth of Massachusetts pursuant to 28 U.S.C. § 1367.

## FACTS RELEVANT TO ALL COUNTS

16. Williams was a BPD police officer from October 1995 through November 2010. Williams last rank was Detective which he held for fifteen years, until he was forced to leave the BPD due to the discrimination and violations of his Constitutional rights as complained of within this Complaint.

17. On information and belief, Williams was one of a handful of minority officers employed by BPD during his tenure.

18. Williams has a bachelor's degree from the Western New England College in 2002. He served in the armed forces in the Army from 1989 through 1992 until earning an Honorable Discharge from the Army.

19. Williams began to suffer from Post Traumatic Street Disorder ("PTSD") around 1998 due to a shooting involving a civilian. Williams requested reasonable accommodations to cope with his PTSD as he feared drawing his firearm again against another human. The City of Brockton granted the reasonable accommodation by moving Williams to the investigators unit within the BPD.

20. From 2004 through 2008, Williams was assigned to work a "desk job" of network administer mixed with criminal investigative duties due to his PTSD disability. His work included conducting investigations, designing websites for the BPD, as well as performing other technological advancements to the BPD to assist the organization with modernizing its operation as a police department.

21. Williams relationship with his superiors including, Elliott, was unremarkable during the time period that he was a network administrator/investigator. Williams excelled at all times while with the BPD receiving accommodations from the State Police for his services as a BPD police officer and being promoted to various titles such as Arson Investigator, Fraud

Analysts, Computer forensic Investigator, and Detective.

### The Racial Harassment of Jose Semedo Giving Rise to First Amendment Claims and Retaliation Against Williams

22. On November 20, 2007, and African-American Brockton business-man named Jose Semedo was arrested by the BPD. Several BPD officers participated in the arrest including Elliott, Shawn Baker, Arthur McNulty, and Jason Ford (the "Arresting Officers"). All of the Arresting Officers were Caucasian and none were of African-American decent like Williams.

23. The Arresting Officers apprehended Semedo under the guise that he had an arrest warrant. During the arrest, Elliott made racially derogatory remarks to Semedo such as calling him a "nigger", "monkey" and made ape like gestures to Semedo's face.

24. Semedo was arraigned after being falsely arrested and kidnapped by the BPD.

25. Semedo was offended by the remarks, gestures, and arrest at the hands of the BPD. On or about November 20, 2007, Semedo sought counsel of Williams who was working a detail at the Brockton Transit Authority directly across the street from the BPD station on Commercial Street in Brockton. Williams advised Semedo to report the incident to the shift supervisor.

26. Semedo discussed with Williams that he felt that his civil rights were violated and that the BPD and/or the Arresting Officers omitted crimes by making racially despairing remarks such as "jungle bunny" and "monkey", gestures, and by arresting Semedo.

27. Semedo explained to Williams that, at some point, he had a warrant for larceny by check; however, the warrant was recalled prior to November 2007 when he was arrested. Semedo explained to Williams that he had provided the warrant recall slip to Elliott, but that Elliott refused to acknowledge that the warrant had been recalled. Semedo then produced to Williams a warrant recall slip showing that the warrant was indeed recalled prior to when he was

arrested.

28. In light of the City of Brockton being racially diverse with a substantial Cape Verdean, Caribbean, and African-American population, Williams and Semedo felt that the racist remarks, gestures, and comments that were made by Elliott were a matter of public concern and safety which needed to be addressed.

29. Williams advised Semedo to file a complaint with the on-duty BPD shift supervisor, Captain Leone McCabe. None of the Arresting Officers had reported Elliott's conduct at that point in time that Williams counseled Semedo to file a complaint to redress Elliott's conduct.

30. The BPD commenced an investigation of Semedo's arrest on or about January 28, 2008 after Semedo spoke with Williams. The Arresting Officers were required to provide written statements regarding their observations of the arrest of Semedo.

31. Semedo and Williams continued to discuss Semedo's victimization at the hands of the BPD on several occasions prior to the time that Williams was forced to retire from the BPD. Many of the discussions between Semedo and Williams occurred in the open for BPD officers to observe at the BPD and in the presence of other police officers.

32. By July 2008, Semedo had communicated with several police officers, BPD staff, and City officials regarding his interactions with Williams and how Williams had advised Semedo to file a complaint against the Arresting Officers.

33. It was known by Elliott, Semedo, the Mayor of Brockton, and a number of other BPD personnel that Williams was a person who advised Semedo to report the Arresting Officers' conduct. The scandal surrounding Semedo's arrest was also addressed publically in the media by Brockton Newspapers who wrote at length regarding this embarrassing incident for the City of Brockton. A copy of an article from the Brockton Enterprise is attached as Exhibit "A." to

6

this Complaint.

34.     Despite the evidence at the hearing that Elliott had committed racists acts while on duty, Gomes, Leary, and Conlon collectively down grounded Elliott's acts to conduct unbecoming.  It is known in the law enforcement community that the Federal Bureau of Investigations is tasked with investigating local police departments for committing acts of racism.  Gomes, Leary, and Conlon conspired to protect Elliott and the other Arresting Officers by downgrading Elliott's charged to conduct unbecoming of an Officer.

### **Continued Harassment of Williams by Elliott and the BPD through the Time Williams was Forced to Retire**

35.     In July of 2008, Elliott was acting as a shift supervisor to Williams when Williams was injured while on duty.  Elliott responded to the scene of the accident to make a work-related injury report from Williams and Williams provided such report(s) to Elliot in the presence of BPD officers Bill Carpenter and Callie Royster.

36.     Williams was on injury leave from July 2008 through August 2008.  During that time period, Elliott refused and neglected to supply the injury report to the City of Brockton's worker's compensation department so that Williams could be compensated.

37.     The paperwork that Williams supplied to Elliott for the purpose of obtain worker's compensation had not been completed upon Williams' return.  The City of Brockton failed to credit Williams' sick leave time during his month-long absence.  Williams had to use vacation and personnel time in order to receive compensation for the time out of work due to injury.

38.     Williams in turn was reprimanded by the BPD for taking sick leave on account of his injury.

39.     In September 2008, Williams testified against Elliott in a hearing relating to the

arrest of Semedo.  BPD Chief Conlon, the Brockton City Solicitor, Elliott, and Semedo were all present during the hearing.  Prior to the hearing, Gomes encountered Williams in the hallway of the building where the meeting was to occur and attempted to encourage Williams to testify favorably towards Elliott.

40.     Williams at the hearing; however, provided testimony and information that was adverse to Elliott's interests, and that further undermined Elliott's credibility as a BPD officer.

41.     While the City of Brockton knew that Elliot was Williams' supervisor, that Williams encouraged Semedo to file his complaint, and that Williams had testified against Elliott, the BPD took no steps to prevent Elliott from retaliating against Williams.  Instead, it allowed and encouraged Elliott to remain in direct contact with Williams committing adverse actions and retaliation against Williams.

42.     Elliott eventually appeared before the Civil Service Commission and was terminated after Williams previously testified against him at the October 2008 BPD hearing.

**Unconstitutional Practices of the BPD and the BRB, and the Retaliatory Acts of the Defendants Taken Against Williams Based on his Disability**

43.     On February 17, 2010, Williams became disabled from a longstanding recurring work-related injury of heart disease.  Williams began to develop heart disease related to his employment as a BPD officer.  The City of Brockton disputed Williams' claims of heart disease at that time and refused to approve Williams' permanent disability.

44.     Williams eventually was forced to seek treatment by five medical physicians. Doctors found that Williams was disabled due to heart disease.

45.     Williams attempted to seriously discuss his disability with Conlon on about April 2010 and Conlon told Williams scathingly that Williams should go to gym and "workout."

46.     Despite the medical diagnosis, the City of Brockton continued to refuse to grant Williams permanent disability benefits. Williams was forced to utilize all of his vacation, personnel, and sick leave time prior to his last day of employment of November 12, 2010 due to these tactics.

47.     The BPD knew that Williams was disabled at that point in time during to his use of sick leave, vacation time, and personnel time, nonetheless, it refused to grant Williams a reasonable accommodation. If Williams did not use his personnel, vacation, sick leave time, he would have been terminated because the City refused to grant him permanent disability.

48.     The City of Brockton's policies are designed to stall or delay a disability retiree's pay and to have a negative impact on their finances so that disability retirees decide to settle or compromise their claims with the City of Brockton. The City of Brockton also ridicules severely those employees that seek to retire based on their disability.

49.     Sgt. Paul Mooney was diagnosed with PTSD around 2008. Mooney reported the illness to the BPD and was openly ridiculed by BPD staff until retiring in 2008.

50.     Officer Scott Wilbur was diagnosed with PTSD around 2011. When he reported his illness, his supervisors laughed in directly to Wilbur's face and removed his firearm. Wilbur then quit due to the treatment of BPD regarding his illness.

51.     Officer George Legrice was diagnosed with heart disease around 2006 when he was rushed from his from doctor's office to a hospital. When he attempted to retire due to disability, Legrice was forced to endure speech regarding that he was "faking" his injuries. On information and belief, he was forced to settle his claim against the City of Brockton prior to arbitration for a percentage less than 50% due to the described delay tactics disability retirement claimants endure.

52. Officer Ronald Schuberth was diagnosed with a mental trauma related to a family member being raped.  He too was forced to endure the same delay tactic with respect to a timely payment of retirement money and was ridiculed by other officers and supervisors for being on light duty.  On information and belief, Ronald Schuberth's retirement pay was delayed for seven weeks.

53. Former Mayor Dan Harrington was overheard by BPD officers on a public radio station commenting that disability retirement claims are denied as a matter of the City of Brockton policy and practice.

54. The City of Brockton failed to submit William' paperwork to the BRB in a timely manner.  As a result, Williams had an 8 week gap in his income from November 12, 2010 to December 31, 2010.

55. Williams was forced to withdraw funds from his personal resources due to the City's delay in processing his retirement.   The City's practices forced an economic hardship on Williams and his family due the extraordinary length of time the City decide to process retirement benefits.

56. The BRB colludes and conspires with the City of Brockton to further ensure that disability retirees are not timely paid.

57. Williams acting *pro se* filed a complaint for discrimination against the City of Brockton on July 28, 2011.  Attached as Exhibit "B" is a copy of the Right to Sue Letter provided by the Equal Employment Opportunity Commission (the "EEOC").

## **COUNT I**

(First Amendment of the United States Constitution)
(Against the Police Defendants and the Retirement Board Defendants)

58. Williams incorporates all of the statements made in the foregoing paragraphs into this paragraph and further states:

59. Williams' testimony before the BPD hearings constituted speech protected by the First and Fourteenth Amendments of the United States Constitution.

60. Williams communications with Semedo regarding the crimes of the BPD and violations of Semedo's civil rights constituted speech protected by the First and Fourteenth Amendments of the United States Constitution.

61. The abuse of Semedo at the hands of the BPD was a matter of public concern and public safety.

62. The Defendants acted under color of state law when they engaged in a continuing pattern of adverse actions against Williams such as retaliating against Williams for engaging in protected conduct, by forcing Williams to take sick leave until such benefits were exhausted, by delaying the payment of retirement benefits to Williams, and by emotionally and psychologically damaging Williams due to Williams addressing an emergency matter of public concern and safety.

63. The above actions violated Williams' freedom of speech as protected by the First and Fourteenth Amendments to the U.S. Constitution, in violation of 42 U.S.C. § 1983.

## COUNT II

(Americans With Disabilities Act (the "ADA") 42 U.S.C. § 12101)
(Against the Police Defendants[1] in their individual capacities)

64.     Williams incorporates all of the statements made in the foregoing paragraphs into this paragraph and further states:

65.     The City of Brockton receives federal funding and is a covered employer under the ADA.

66.     The ADA prevents an employer from discriminating against an employee in any way regarding the benefits of employment based on disability.

67.     Williams was disabled. The BPD previously provided a reasonable accommodation to Williams, but refused to supply a reasonable accommodation to Williams for the heart disease condition.

68.     Williams could perform his job with or without an accommodation as he was a very skilled employee.

69.     The Police Defendants engaged in a continuing pattern of adverse actions against Williams based on his disability through the date in time when he was forced to retire, such as retaliating against Williams for engaging in protected conduct, forcing Williams to take sick leave, vacation and personnel time until such benefits were exhausted, delaying the payment of retirement benefits to Williams, by making scathing remarks, and by emotionally and psychologically damaging Williams due to his disability.

70.     The Police Defendants violated the ADA and Williams is entitled to damages.

---

[1] This claim is not brought against the City of Brockton.

.
.
.

## COUNT III

(42 U.S.C. § 1983)
(Against the Police Defendants and the Retirement Board Defendants)

71.     Williams incorporates all of the statements made in the foregoing paragraphs into this paragraph and further states:

72.     The Police Defendants act under color of law and have a custom, policy or practice of applying coercive tactics to the disability retirees whereby the City scathes, admonishes, ridicules, delays retirement benefit payments, or otherwise takes adverse actions against the disabled that seek to enforce their state and federal Constitutional rights.

73.     The Retirement Board Defendants act under color of law and have a custom, policy or practice of assisting the Police Defendants in applying coercive tactics to the disability retirees whereby the Retirement Board Defendants delay retirement benefit payments, or otherwise takes adverse actions against the disabled that seek to enforce their state and federal Constitutional rights.

74.     The Police Defendants and the Retirement Board Defendants have violated the Fifth and Fourteenth Amendments the U.S. Constitution, the laws of the Commonwealth of Massachusetts, and therefore have violated 42 U.S.C. 1983.

## COUNT IV

(42 U.S.C. § 1988)
(The Police Defendants and the Retirement Board Defendants)

75.     Williams incorporates all of the statements made in the foregoing paragraphs into this paragraph and further states:

76.     The Police Defendants and the Retirement Board Defendants have acted to

deprive Williams of his Constitutional Rights.

     77.    Williams is entitled to reasonable attorney's fees in this action.

**WHEREFORE,** Williams prays that the Court:

     1.    Award Williams damages in an amount to be determined at trial;

     2.    Grant Williams a trial by jury on all claims so triable; and

     3.    Award Williams attorney's fees pursuant to the statutes complained of herein including 42 U.S.C. § 1983, 42 U.S.C. § 12101, and 42 U.S.C. § 1988.

     4.    Grant Williams such other further statutory relief as provided by the law and as the Court determines is just and proper.

Respectfully submitted, this, 6th day of March 2012.

s/ John J. Hightower, Esq.
John J. Hightower, Attorney at Law
90 Pleasant St, Suite 12
Randolph, MA 02368
Telephone: (617) 308-7136
*Counsel for Plaintiff*