UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KEN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 12-10430-JGD |
| THE CITY OF BROCKTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANT'S MOTION FOR INDEMNIFICATION**

January 22, 2013

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Ken Williams ("Williams"), is a former officer in the Brockton, Massachusetts Police Department ("BPD"). He has brought this civil rights action against the City of Brockton ("City" or "Brockton"), four present and former officers of the BPD, the Brockton Retirement Board, and five members of the Retirement Board. By his Complaint, Williams has asserted claims against all of the defendants, pursuant to 42 U.S.C. §§ 1983 and 1988, for deprivation of his constitutional rights (Counts I, III and IV), as well as claims against the four individual police officers for violations of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (Count II).

The matter is presently before the court on the "Motion by Defendant Lon Elliot to Have the Court Order Indemnification for Defense Costs, Fees and Expenses" (Docket

No. 15).  By his motion, defendant Lon Elliot ("Elliot"), a former officer in the BPD, is seeking an order directing the City to indemnify him in the same manner and to the same extent as it is indemnifying the three remaining police officer defendants, for the legal costs, fees and expenses incurred and to be incurred in connection with Elliot's defense of this action.  Elliot, who claims that he is indigent, contends that such relief is warranted under Sections 9 and 13 of the Massachusetts Tort Claims Act, Mass. Gen. Laws c. 258, §§ 9 and 13, as well as under the terms of a Collective Bargaining Agreement between the City and the Police Supervisors Union, Local 1162.  For all the reasons detailed below, this court finds that the City has acted within its discretion in denying Elliot's request for indemnification.  Accordingly, the defendant's motion for indemnification is DENIED.  However, the denial shall be WITHOUT PREJUDICE to renewal in the event the City adopts Mass. Gen. Laws c. 258, § 13 providing for mandatory indemnification, and such adoption applies retroactively to Elliot.

## II.  FACTUAL BACKGROUND

The following facts are relevant to the defendant's motion for indemnification.

### Williams' Allegations Against Elliot

Williams filed his Complaint in this action on March 6, 2012.  Therein, Williams claims that the defendants discriminated against him and violated his constitutional rights during the time when he was employed at the BPD as one of a handful of minority police officers.  (See Compl. (Docket No. 1) ¶¶ 16-17).  As alleged in the Complaint, the events

giving rise to Williams' claims against Elliot took place between November 2007 and October 2008.

Specifically, Williams alleges that on November 20, 2007, an African-American businessman named Jose Semedo ("Semedo") was falsely arrested by several Caucasian members of the BPD, including Elliot, based on the purported existence of a warrant for Semedo's arrest. (Id. ¶¶ 22-24). According to Williams, Elliot made racially offensive remarks and disparaging gestures toward Semedo during the course of the arrest. (Id. ¶ 23). Elliot also refused to acknowledge evidence that Semedo produced to the officers showing that the warrant had been recalled and that Semedo was not subject to arrest. (Id. ¶ 27). Semedo allegedly told the plaintiff about Elliot's offensive behavior, and Williams advised Semedo to report the incident and file a complaint with the on-duty shift supervisor at the BPD. (Id. ¶¶ 25, 29).

The plaintiff contends that on or about January 28, 2008, the BPD launched an investigation into the circumstances of Semedo's arrest. (Id. ¶ 30). Allegedly, the arrest also became the subject of media scrutiny, and a source of embarrassment to the City. (Id. ¶ 33). Williams claims it was no secret that he was the person who had encouraged Semedo to report the arresting officers' conduct. (Id.). In fact, Williams and Semedo allegedly continued to discuss Semedo's mistreatment in the presence of other BPD police officers. (Id. ¶ 31).

Williams alleges that there was no effort to protect Williams from possible retaliation by Elliot. (See id. ¶¶ 33, 35). Thus, the plaintiff claims that in July 2008,

Elliot was acting as Williams' shift supervisor when Williams was injured on the job. (Id. ¶ 35). Elliot responded to the scene of the accident and obtained a work-related injury report from Williams for the purpose of making a worker's compensation claim. (Id. ¶¶ 35, 37). However, Elliot allegedly refused to submit the report to the City's worker's compensation department. (Id. ¶¶ 36-37). Williams claims that as a result, he received no worker's compensation coverage during the time he was out on injury leave in July and August 2008, and was forced to use his vacation and personal time instead. (Id.).

In about September or October 2008, following Williams' return to work, a hearing took place at the BPD regarding Elliot's conduct during the arrest of Semedo. (Id. ¶¶ 39, 42). Williams alleges that he provided testimony and information at the hearing which was adverse to Elliot's interests and undermined Elliot's credibility. (Id. ¶ 40). Again, however, no efforts were made to protect Williams from retaliation by Elliot. (Id. ¶ 41). Consequently, Elliot allegedly remained Williams' supervisor, and was able to take adverse actions against the plaintiff. (Id.).

Elliot ultimately was terminated from employment with the BPD in 2009 as a result of his alleged role in Semedo's arrest. (See id. ¶ 42; Compl. Ex. A). As described below, the City has refused to indemnify Elliot in the present litigation on the grounds that his termination from the BPD was for cause. (Def. Ex. 4).[1]

---

[1] "Def. Ex." refers to the exhibits attached to Elliot's Motion (Docket No. 15).

## The Collective Bargaining Agreement

Both Elliot and the City agree that during the time of the events giving rise to Williams' claims, the terms and conditions of Elliot's employment were governed by a Collective Bargaining Agreement ("CBA"), as updated and amended by a Memorandum of Agreement between the City of Brockton and the Police Supervisors Union, Local 1162, L.I.U.A. ("Union") dated June 2006 ("MOA").  (See Elliot's Reply Mem. (Docket No. 22) at 2-3; City's Supp. Opp. Mem. (Docket No. 27) at 4-5). Significantly, Article XVI of the CBA contained provisions relating to the indemnification of police officers by the City.  In particular, Article 16.3 specifically provided as follows:

> **16.3**  The parties are in agreement that the issue of indemnification pursuant to the provisions of General Laws Chapter 258, Section 9 has arisen and will be resolved as follows:
>
> *(A)  There will be established a Labor Management Committee made up of an equal number of representatives, not to exceed three (3) representatives for either side, namely the Union and Management, to consider the policy for indemnification of Police Officers, which policy will be reduced to writing and made a part of the Contract hereof.*
>
> (B)  Pending the resolution as provided in Paragraph (A) above, the following will be an agreement between the Parties relative to indemnification.
>
> 1.  The City Solicitor or his designee will forthwith certify any claims against a police officer as to whether the claims, if true, fall within the scope of the Police Officer's employment or, if not, then will certify non-scope of employment, and in either cases such certification or non-certification shall be made in writing and delivered to the Police Officer and a representative of the Union.

> 2. If the claims are certified to be within the scope of the police officer's employment, then the City will immediately be obliged, and shall agree in writing, to indemnify the Police Officer for all reasonable legal costs arising from, including legal fees and fees of counsel if independent counsel is employed.
>
> 3. The City will propose a City Ordinance whereby Police Officers will be indemnified absolutely in all instances that are described as being permissive in Massachusetts General Laws Chapter 258, § 9.

(CBA at Art. 16.3 (emphasis added)).[2]

The policy for indemnification of Police Officers that was subsequently adopted by the parties to the CBA in accordance with Article 16.3(A) is set forth in the January 2006 MOA. Specifically, under the terms of the MOA, the City and the Union agreed that Article XVI of the CBA would be revised to read as follows:

> Section 1. Employees injured in the line of duty shall be eligible for indemnification of reasonable medical expenses in accordance with M.G.L. c. 41, § 100.
>
> Section 2. *The policy for indemnification of officers for acts within the scope of employment shall be as per M.G.L. c. 258, § 9.* The City Solicitor or designee will certify within a reasonable time whether the claims fall within the officer's scope of employment, such certification to be in writing and delivered to the officer and a representative of the union.

---

[2] The indemnification provisions of the CBA, including Article 16.3, are set forth in Exhibit 1 to Elliot's Reply memorandum (Docket No. 22).

(MOA at Art. 16 (emphasis added)).[3]  As described below, the parties dispute whether the City has an obligation to indemnify Elliot, under Massachusetts statutory law or the terms of the parties' Agreements, for acts giving rise to Williams' claims against him in this action.

### Elliot's Request for Indemnification

After Williams initiated this lawsuit, Elliot requested that the City provide him with legal representation.  (Def. Ex. 4).  On July 30, 2012, litigation counsel for the City and the remaining police officer defendants sent Elliot a letter informing him that the City would not represent him or indemnify him in connection with this proceeding, and that Elliot would "be responsible for any and all attorney's fees, costs and judgments incurred against you in this action."  (Def. Ex. 3).  On August 3, 2012, the City Solicitor sent Elliot another letter confirming the City's refusal to represent or indemnify him.  (Def. Ex. 4).  Specifically, the City Solicitor stated that he had reviewed Elliot's request, but "that due to your termination for cause from the City of Brockton Police Department, the City will neither be representing you in the [Williams] matter, nor reimbursing you for any legal fees associated with your representation."  (Id.).

Additional factual details relevant to this court's analysis are described below where appropriate.

### III.  ANALYSIS

---

[3]  A complete copy of the MOA is attached as Exhibit 1 to the City's Supplemental Opposition to Elliot's motion (Docket No. 27).

The issue raised by Elliot's motion is whether the City is required by statute or by the terms of the CBA and the MOA to indemnify Elliot under the same terms and conditions as the other police defendants. This court finds that the relevant statutory provisions provide the City with discretion to decide, on a case-by-case basis, whether to indemnify a police officer facing civil rights claims arising from acts that occurred within the scope of his employment. This court also finds that to the extent the indemnification provisions of the CBA and the MOA are even applicable to this case, they similarly provide the City with authority to choose whether or not to indemnify members of the Police Supervisors Union for acts taken within the scope of their employment. Therefore, Elliot cannot show that an order to indemnify is warranted.

### A.    Claim for Indemnification Under Mass. Gen. Laws c. 258, § 9

Elliot contends, as an initial matter, that the City is required to provide him with indemnification under Section 9 of the Massachusetts Tort Claims Act, Mass. Gen. Laws c. 258, § 9. (See Motion (Docket No. 15) at 1; Elliot's Reply Mem. (Docket No. 22) at 2). However, Elliot's argument that Section 9 mandates indemnification is inconsistent with the statutory language and lacks support in the case law.

The relevant language of the statute provides that

> [p]ublic employers *may* indemnify public employees ... from personal financial loss, all damages and expenses, including legal fees and costs, if any, in an amount not to exceed $1,000,000 arising out of any claim, action, award, compromise, settlement or judgment by reason of an intentional tort, or by reason of any act or omission which constitutes a violation of the civil rights of any person under any federal or state law, if such employee ... at the time of such

> intentional tort or such act or omission was acting within the scope of his official duties or employment. No such employee or official ... shall be indemnified under this section for violation of any civil rights if he acted in a grossly negligent, willful or malicious manner.

Mass. Gen. Laws c. 258, § 9 (emphasis added). Accordingly, Section 9 provides "public employers with the *discretion* to indemnify public employees for financial loss and expenses arising from certain civil actions (intentional torts and civil rights violations)," as long as the public employee was acting within the scope of his official duties or employment and the employee's actions were not grossly negligent, willful or malicious. Triplett v. Town of Oxford, 439 Mass. 720, 726, 791 N.E.2d 310, 315 (2003) (emphasis in original); see also City of Boston v. Boston Police Patrolment's Ass'n, Inc., 48 Mass. App. Ct. 74, 75, 717 N.E.2d 667, 669 (1999) (finding that arbitrator lacked authority to order municipality to relinquish "its discretionary power to decide whether to indemnify on a case-by-case basis" pursuant to Mass. Gen. Laws c. 258, § 9). It does not support Elliot's contention that the City is required to indemnify him, even if the conditions of Section 9 are satisfied.

Although Elliot acknowledges that the statute's use of the term "may" in the first sentence is discretionary, he argues that the City should not have the ability to indemnify some police officers but not others, and that the City must have a sound basis for denying Elliot's request for indemnification while providing representation to his co-defendants. (Elliot's Reply Mem. (Docket No. 22) at 2; Elliot's Supp. Reply Mem. (Docket No. 28)

at 4). He further asserts that the City has failed to provide him with any adequate grounds for its decision. (Id.).

Elliot's argument that the City must provide a sound justification for its refusal to indemnify him is without merit. As an initial matter, Elliot cites no case law supporting his interpretation of the statute, and this court has found none. Furthermore, nothing in the language of Section 9 supports Elliot's assertion. "The general rule of construction is that where the language of [a] statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." Dube v. Contributory Ret. Appeal Bd., 50 Mass. App. Ct. 21, 23, 733 N.E.2d 1089, 1091 (2000) (quotations and citations omitted). While the plain language of Section 9 grants public employers authority to indemnify their employees under certain conditions, it does not require them to do so in any given case. Furthermore, the statute imposes no obligation on public employers to treat their employees equally or to provide support for a refusal to indemnify. Courts "do not read into [a] statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose." Id. at 24, 733 N.E.2d at 1091 (quotations and citations omitted). Even if the City's decision may arguably appear unfair given its agreement to represent the remaining police officers in this action, the plain language of Section 9 does not support Elliot's reading of the statute, and does not provide grounds for the requested relief.[4]

---

[4] Because Mass. Gen. Laws c. 258, § 9 is discretionary and does not require indemnification here, it is not necessary to address the City's arguments that it lacks the authority to

### B.     Claim for Indemnification Under Mass. Gen. Laws c. 258, § 13

Elliot also argues that indemnification is warranted under Section 13 of the Massachusetts Tort Claims Act, Mass. Gen. Laws c. 258, § 13. This argument too is unpersuasive.

Section 13 of Chapter 258 provides in relevant part that

> [a]ny city or town which accepted section one hundred I of chapter forty-one on or before July twentieth, nineteen hundred and seventy-eight, and any other city which accepts this section according to its charter, and any town which accepts this section in the manner hereinafter provided in this section shall indemnify and save harmless municipal officers, elected or appointed from personal financial loss and expense including reasonable legal fees and costs, if any, in an amount not to exceed one million dollars, arising out of any claim, demand, suit or judgment by reason of any act or omission, except an intentional violation of civil rights of any person, if the official at the time of such act or omission was acting within the scope of his official duties or employment.

Mass. Gen. Laws c. 258, § 13. "The purpose of § 13, where accepted by a [city or] town, is to provide municipal officers with mandatory indemnification for personal financial loss and expenses, including reasonable legal fees and costs, subject to specified conditions." McCoy v. Town of Kingston, 68 Mass. App. Ct. 819, 827, 864 N.E.2d 1251, 1258 (2007). The record in the instant case shows that Brockton has not yet accepted Section 13. Therefore, it is not required by statute to provide Elliot with indemnification in this case.

---

indemnify Elliot because his actions were grossly negligent, willful or malicious, and because Elliot is no longer an employee of the BPD. (See City's Opp. (Docket No. 19) at 2-3; City's Supp. Opp. (Docket No. 27) at 6).

-11-

The City has introduced evidence showing that on May 14, 2012, the Brockton City Council moved to adopt Mass. Gen. Laws c. 258, § 13. (City's 2nd Supp. Opp. Mem. (Docket No. 29) at Ex. A). The proposal was read and referred to a Standing Committee on Finance. (Id.). However, there is no indication that the proposal has been approved or that the City has officially adopted § 13 of the Tort Claims Act.[5]

Nevertheless, Elliot argues that the City is bound by Section 13 because it accepted Mass. Gen. Laws c. 41, § 100 on September 21, 1972. (Elliot's Supp. Reply Mem. (Docket No. 28) at 5). Although Elliot has submitted evidence in support of his assertion (see id. at Ex. 2), the City's acceptance of Mass. Gen. Laws c. 41, § 100 does not warrant an order in Elliot's favor. As described above, Section 13 of the Tort Claims Act applies to "[a]ny city or town which accepted *section one hundred I* of chapter forty-one on or before July twentieth, nineteen hundred and seventy-eight[.]" Mass. Gen. Laws c. 158, § 13 (emphasis added). There is no reference in Section 13 to cities and towns that accepted § 100 of Chapter 41 prior to 1978 or at any other time. See id.[6]

The reasoning behind the Legislature's decision to make indemnification mandatory for cities and towns that had accepted Section 100I prior to 1978 was

---

[5] Because there is a possibility that the City will adopt the mandatory indemnification requirement of Mass. Gen. Laws c. 258, § 13, Elliot's motion will be denied without prejudice to renewal if the City accepts Section 13 and it is applicable retroactively to Elliot.

[6] The current version of Mass. Gen. Laws c. 41, § 100 concerns indemnification for certain expenses incurred by injured police officers and fire fighters, and for certain expenses and damages resulting from the officers' or fire fighters' operation of a motor vehicle. Elliot does not contend that he is entitled to indemnification under this statute.

described by the Supreme Judicial Court ("SJC") in Triplett.  As the court explained in that case, at the time the Legislature enacted Mass. Gen. Laws c. 258, § 9, it repealed or struck other indemnification statutes.  Triplett, 439 Mass. at 726, 791 N.E.2d at 315.  One of the repealed statutes was Mass. Gen. Laws c. 41, § 100I, a statute which had provided for the mandatory indemnification of municipal officers.  Id.  Because the repeal of Section 100I "threw into doubt the continued statutory support of the automatic mandatory indemnification of municipal officers of those cities and towns which had accepted § 100I[,]" the Massachusetts League of Cities and Towns sought to have the statute reinstated.  Id. (internal quotations and punctuation omitted).  "The Legislature responded by enacting G.L. c. 258, § 13, . . . an enabling statute that closely resembles § 100I."  Id. at 726-27, 791 N.E.2d at 315 (footnote omitted).

The SJC's discussion in Triplett demonstrates that by making mandatory indemnification applicable to cities and towns that had accepted § 100I prior to its repeal, the Legislature was able to honor a decision that had already been made by those municipalities.  There is no indication in Triplett or elsewhere in the record before this court that a similar decision was made by municipalities which had accepted Mass. Gen. Law c. 41, § 100 prior to 1978, or that the Legislature intended to make mandatory indemnification applicable to such cities and towns.  Elliot's argument that Brockton is bound by Mass. Gen. Laws c. 258, § 13 because it accepted Mass. Gen. Laws c. 41, § 100 in 1972 appears to be based on a misreading of the statute.  It is not supported by the plain language of Section 13 or by any other authority.

### C.     Claim for Indemnification Under the CBA and the MOA

Elliot contends that in any event, he is entitled to indemnification pursuant to the CBA and the MOA between the City and the Union. For the reasons that follow, this court finds that no such relief is warranted under the terms of those Agreements.[7]

By its terms,[8] the MOA provides that it covers the period July 1, 2005 through June 30, 2008, a period which precedes the July 2008 date when Elliot allegedly took his first retaliatory action against Williams by allegedly refusing to submit his injury claim. Nevertheless, as described above, both Elliot and the City assert that the CBA, as updated and amended by the MOA, governed the terms and conditions of Elliot's employment at the time of the events giving rise to Williams' claims against Elliot. (See Elliot's Reply Mem. (Docket No. 22) at 2-3; City's Supp. Opp. Mem. (Docket No. 27) at 4-5). Consequently, this court will assume that the CBA, as updated by the MOA, was either extended or interpreted by the parties to cover Elliot's claim for indemnification.

A review of the terms of the CBA and the MOA establishes that they do not deprive the the City of its discretion to deny Elliot indemnification. "It is, of course, basic that a collective bargaining agreement may not require a result that conflicts with a

---

[7] Neither Elliot nor the City contends that Elliot was required to file a grievance and exhaust his contractual remedies prior to seeking enforcement of the CBA and the MOA by the court. (See City's Supp. Opp. Mem. (Docket No. 27) at 2-6; Elliot's Supp. Reply Mem. (Docket No. 28) at 1-3). Accordingly, this court will assume for purposes of this decision that the matter is properly before the court.

[8] Although the City submitted a complete copy of the MOA, Elliot has submitted only select portions of the CBA.

mandate of State law, unless the law is listed in [Mass. Gen. Laws c. 150E,] §7(d)." Town of Dedham v. Dedham Police Ass'n (Lieutenants & Sergeants), 46 Mass. App. Ct. 418, 419, 706 N.E.2d 724, 726 (1999). Mass. Gen. Laws c. 258, § 9 is not one of the statutory provisions that is listed in Mass. Gen. Laws c. 150E, § 7(d). Therefore, to the extent the CBA and the MOA conflict with the City's statutory right to exercise discretion as to whether to indemnify its employees under the conditions set forth in Section 9, the Agreements must yield to the statutory authority. See Boston Police Patrolmen's Ass'n, Inc., 48 Mass. App. Ct. at 76-77, 717 N.E.2d at 670 (finding that while a municipality, acting through its legislative process, may provide "by ordinance for blanket indemnification of a class of officers whose alleged acts fell within the conditions for indemnification fixed by § 9[,]" "a public employer cannot similarly divest the municipality of its discretion in this regard by contract"). In this case, however, the court finds that there is no inconsistency between Section 9 of the Massachusetts Tort Claims Act and the terms of the parties' Agreements.

As described in Article XVI of the CBA, at the time the CBA was in effect, the City and the Union were involved in a dispute regarding the issue of indemnification under Mass. Gen. Laws c. 258, § 9. (See CBA at Art. 16.3). In order to resolve their dispute, the City and the Union agreed to create a Labor Management Committee that would adopt a policy for the indemnification of police officers. (Id. at Art. 16.3(A)). They also decided that the policy would be reduced to writing and made a part of their Agreement. (Id.).

Pending the completion of an indemnification policy by the Labor Management Committee, the City agreed to take certain actions relative to the issue of indemnification. (See id. at Art. 16.3(B)). In particular, the City agreed to indemnify police officers for all reasonable legal costs arising from any claims against the police officer, as long as those claims were certified to be within the scope of the police officer's employment. (Id. at Art. 16.3(B)(2)). It also agreed to propose an ordinance relating to mandatory indemnification. (See id. at Art. 16.3(B)(3)). However, those obligations expired when a policy for indemnification was established and the CBA was amended by the MOA. (See MOA at Art. 16).

Pursuant to the MOA, the Union and City agreed that "[t]he policy for indemnification of officers for acts within the scope of employment shall be as per M.G.L. c. 258, § 9[,]" and that the City Solicitor would certify within a reasonable time whether the claims at issue fell within the officer's scope of employment. (Id.). In other words, the City and the Union agreed to adopt Section 9 of the Tort Claims Act as their policy for indemnification of police officers. By doing so, they agreed that to the extent the conditions of Section 9 were met, the City would have the authority to exercise its judgment as to whether to provide indemnification in a given case.

Notwithstanding the parties' decision to adopt Section 9 as their policy for indemnification, Elliot contends that the parties' Agreements made indemnification of police officers mandatory. In particular, he asserts that the MOA "reiterates in Article 16, Section 2, that the Police Officers *shall* be indemnified per M.G.L. c. 258, § 9, for acts

within the scope of employment." (Elliot's Reply Mem. (Docket No. 22) at 3; Elliot's Supp. Reply Mem. (Docket No. 28) at 7). Elliot's argument is inconsistent with what the Agreement actually says. As described above, Article 16, Section 2 of the MOA provides that "[t]he policy for indemnification . . . shall be as per M.G.L. c. 258, § 9." (MOA at Art. 16). Therefore, based on the plain language of the MOA, the parties agreed that c. 258, § 9 controls, as a result of which the City would have discretion to determine whether to indemnify its officers on a case-by-case basis. See Polito v. Sch. Comm. of Peabody, 69 Mass. App. Ct. 393, 396, 868 N.E.2d 624, 626-27 (2007) (explaining that courts "must interpret the words in a contract according to their plain meaning").

Elliot's suggestion that the promises made by the City in the CBA manifested an intent to adopt a mandatory indemnification policy is similarly undermined by the plain language of the Agreements. (See Elliot's Supp. Reply Mem. (Docket No. 28) at 7-8). As described in the CBA, the City and the Union acknowledged that "the issue of indemnification pursuant to the provisions of General Laws Chapter 258, Section 9 has arisen" so they decided to establish a Labor Management Committee, made up of representatives from both parties, to create an indemnification policy. (See CBA at Art. 16.3). Although the City agreed to provide indemnification pending the creation of a policy, the fact that the parties had not been able to agree on a policy indicates that the City was unwilling to bind itself contractually to mandatory indemnification. In fact, the policy that ultimately was adopted and was set forth in the MOA confirms that there was no agreement by the City to relinquish its discretionary authority under Mass. Gen. Laws

c. 258, § 9.  (See MOA at Art. 16).  To the extent the CBA and the MOA are applicable to this case, they do not support Elliot's claim for indemnification.

## IV.  CONCLUSION

For all the reasons described herein, the "Motion by Defendant Lon Elliot to Have the Court Order Indemnification for Defense Costs, Fees and Expenses" (Docket No. 15) is DENIED.  However, the denial shall be WITHOUT PREJUDICE to renewal in the event the City adopts Mass. Gen. Laws c. 258, § 13 providing for mandatory indemnification, and such adoption applies retroactively to Elliot.

    / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge